**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY CASTILLO and KADEN GEIGER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| ATEKCITY CORPORATION and VESYNC CORPORATION, | |
| Defendants. | |

Plaintiffs Shirley Castillo and Kaden Geiger (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant ATEKCITY CORPORATION ("Atekcity") and Defendant VESYNC CORPORATION ("Vesync") (collectively "Defendants") for the manufacture, marketing, and sale of Cosori brand air fryers.  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF ACTION

1.      This is a class action against Defendants for the manufacture, marketing, and sale of its Cosori brand air fryers (the "Products")[1], all of which suffer from an identical defect in design. Specifically, the Products can unexpectedly overheat, posing fire and burn hazards (the "Defect"). The Defect is extraordinarily dangerous and has rendered the Products unsuitable for their principal and intended purpose.

2.      Due to the dangerous nature of the Defect, Defendants initiated a recall (the "Recall") of its Cosori brand air fryers.[2]  However, the Recall is grossly inadequate, as it does not provide consumers, like Plaintiffs, with immediate monetary relief, fails to provide sufficient notice to consumers, and fails to include all models affected by the Defect.

3.      Plaintiffs bring claims against Defendants on behalf of themselves and on behalf of a class of all other similarly situated purchasers of the Products for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; (3) fraud; (4) unjust

---

[1] The Cosori brand air fryers in the Recall include the following model numbers: CP158-AF, CP158-AF-R19, CP158-AF-RXW, CP158-AF-RXR, CAF-P581-BUSR, CAF-P581-AUSR, CAF-P581-RUSR, CP137-AF, CP137-AF-RXB, CP137-AF-RXR, CP137-AF-RXW, CS158-AF, CS158-AF-RXB, CS158-AF-R19, CAF-P581S-BUSR, CAF-P581S-RUSR, CAF-P581S-AUSR, CO137-AF, CO158-AF, CO158-AF-RXB, CP258-AF.  The units were size 3.7 and 5.8 qt. and were sold in black, gray, white, blue, or red colors.  However, additional model numbers, including those purchased by Plaintiff Castillo, were also affected by the Defect.

[2] https://www.cpsc.gov/Recalls/2023/Two-Million-COSORI-Air-Fryers-Recalled-by-Atekcity-Due-to-Fire-and-Burn-Hazards.

1    enrichment; (5) breach of implied warranties; and (6) violations of the Magnuson-Moss Warranty

2    Act.

3                                               **PARTIES**

4            4.      Plaintiff Shirley Castillo is, and at all times relevant to this action has been, a resident

5    of San Francisco, California.  In approximately May 2022, Ms. Castillo purchased a Cosori air fryer

6    (model number: CAF-L501-AUF) online from Amazon.  Ms. Castillo purchased the Product

7    because she believed it was fit for use as an air fryer.  However, the Product Ms. Castillo purchased

8    was not fit for use as an air fryer due to the Product's Defect.  Ms. Castillo would not have

9    purchased the Product had she known that the Product was unfit to perform its intended purpose,

10   rendering the Product useless.

11           5.      The Product that Ms. Castillo purchased malfunctioned shortly after she purchased it,

12   including incidents of overheating and smoking.  Due to the Product's failure to perform its

13   intended purpose, Ms. Castillo purchased a second Cosori air fryer (model number: CAF-L501-

14   KUS), which also experienced the overheating Defect.  Ms. Castillo no longer uses the Product

15   because of the significant injury risk and fire hazard posed by the Defect.

16           6.      Ms. Castillo reviewed the Products' representations prior to her purchases.

17   Defendants represented that the Products were each air fryers and described features typical of air

18   fryers but did not disclose the Defect.

19           7.      Had there been a disclosure, Ms. Castillo would not have bought the Products

20   because the Defect would have been material to her, or at the very least, she would have purchased

21   the Products at a substantially reduced price.  Ms. Castillo relied on the representations in making

22   her purchase decisions.

23           8.      Despite the presence of the Defect, neither of the Products purchased by Ms. Castillo

24   were included in the Recall.  Therefore, Ms. Castillo was unaware that Defendant had issued a

25   Recall in connection with the Defect and would be precluded from receiving the benefit of the

26   Recall.

27           9.      Plaintiff Kaden Geiger is, and at all times relevant to this action has been, a resident

28   of Pleasanton, California.  On approximately April 22, 2021, Mr. Geiger purchased a Cosori air

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                    2

1

2

3

4

5

fryer (model number: CS158-AF) online from Amazon.  Mr. Geiger purchased the Product because he believed it was fit for use as an air fryer.  However, the Product Mr. Geiger purchased was not fit for use as an air fryer due to the Product's Defect.  Mr. Geiger would not have purchased the Product had he known that the Product was unfit to perform its intended purpose, rendering the Product useless.

6

7

8

9

10.     The Product Mr. Geiger purchased malfunctioned shortly after he purchased it, including several incidents of burning, overheating, and smoking, causing damage to his kitchen cabinets.  Mr. Geiger no longer uses the Product because of the significant injury risk and fire hazard posed by the Defect.

10

11

12

11.     Mr. Geiger reviewed the Product's representations prior to his purchase.  Defendants represented that the Product was an air fryer and described features typical of air fryers but did not disclose the Defect.

13

14

15

16

12.     Had there been a disclosure, Mr. Geiger would not have bought the Product because the Defect would have been material to him, or at the very least, he would have purchased the Product at a substantially reduced price.  Mr. Geiger relied on the representations made by Defendants in making his purchasing decision.

17

18

19

20

21

13.     Due to the nature of the Defect, the Defect was present in the Products at the time of purchase.  Consumers, like Plaintiffs, should be able to expect that the products they purchase do not bear a fraudulently concealed defect that presents a safety hazard.  Consumers should also be free of the inconvenience of a recall, especially where a company has been aware of the defective nature of its products.

22

23

24

14.     Defendant Atekcity is an Iowa corporation and, upon information and belief, has its principal place of business at 174 W. Lincoln Ave, #589, Anaheim, CA 92805.  Defendant Atekcity manufactures, markets, and distributes the Products throughout the United States.

25

26

27

15.     Defendant Vesync is a California corporation and, upon information and belief, has its principal place of business at 1202 N. Miller St., Unit A, Anaheim, CA 92806.  Defendant Vesync manufactures, markets, and distributes the Products throughout the United States.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

17.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this District because Plaintiffs purchased the Product in this District.

**COMMON FACTUAL ALLEGATIONS**

**The Overheating Defect**

19.     Defendants sell air fryers, toaster ovens, food dehydrators, and other home-cooking essentials.  Among the various products sold by Defendants are their Cosori brand air fryers, which are the Products at issue here.  The Products include those manufactured between June 2018 through December 2022, and include, but are not limited to, the following models: CP158-AF, CP158-AF-R19, CP158-AF-RXW, CP158-AF-RXR, CAF-P581-BUSR, CAF-P581-AUSR, CAF-P581-RUSR, CP137-AF, CP137-AF-RXB, CP137-AF-RXR, CP137-AF-RXW, CS158-AF, CS158-AF-RXB, CS158-AF-R19, CAF-P581S-BUSR, CAF-P581S-RUSR, CAF-P581S-AUSR, CO137-AF, CO158-AF, CO158-AF-RXB, CP258-AF.

20.      The Products were made with a Defect involving functional electric components of the air fryer.  The Defect results in the air fryer overheating, causing burning or smoking, posing a significant injury hazard.  In fact, between June 2018 and December 2022, Defendants received at least **205 complaints** of overheating, burning, melting, and smoking resulting from the Defect.[3] The Defect is substantially likely to materialize during the useful life of the Products.

---

[3] *Id.*

21.     With thousands of units sold at approximately $100 each, Defendants profited enormously from its failure to disclose the Products' Defect sooner.

22.     The Defect at issue here renders the Products unsafe to operate.  Defendants had exclusive knowledge of the Defect, which was not known to Plaintiffs or Class Members.

23.     Defendants made partial representations to Plaintiffs and Class Members while suppressing the safety defect.  Specifically, by displaying the Products and describing their features, the product packaging implied that the Products were suitable for use as an air fryer, without disclosing that they had a critical safety-related defect that could result in harm to users of the Products.

**Defendants' Inadequate Recall**

24.     On February 23, 2023, Defendants issued a recall of the Products, which listed only twenty-one (21) models of Cosori brand air fryers.

25.     The Recall was due to a serious injury hazard associated with the Products. Specifically, Defendants admitted that their Products had a defect in design and materials that resulted in their Cosori brand air fryers overheating, causing burning or smoking, posing a significant injury hazard.

26.     Defendants issued a recall of over 2,000,000 units of the Product in the United States.

27.     Importantly, Defendants are not offering consumers any <u>monetary</u> relief due to the Defect.

28.     The Recall allowed Defendants to *say* they were doing right by their customers, but in fact the Recall protected Defendants' profits by suppressing returns:

(a)     Although Defendants posted information relating to the Products Recall and Defect on the Cosori website[4], the link containing information about the Recall was buried at the bottom of Defendants' website.  Class Members would not have reason to follow the link if they did not already know about the Recall in the first place, which narrows the reach of the Recall to just a

---

[4] https://recall.cosori.com/

1   limited portion of Cosori purchasers.  Moreover, Defendants failed to notify consumers of the

2   Defect who purchased the Products from third-party websites, such as Amazon;

3           (b)     Defendants failed to include all defective models in the Recall, including

4   without limitation, the air fryers models that Ms. Castillo purchased (models CAF-L501-AUF and

5   CAF-L501-KUS, respectively).  That deprives Plaintiff Castillo and all others similarly situated of

6   any return benefits or remedies, rendering the Recall inadequate for consumers who did not

7   purchase the models listed in the Recall but whose Products still experienced the Defect; and

8           (c)     Defendants have not offered immediate refunds to consumers, but instead,

9   have had consumers engage in an at-length claims process that offers a "free replacement" after

10  having consumers confirm that the units at issue are no longer in use.  It also requires consumers to

11  still be in possession of the Products.  Clearly, this process does not provide adequate relief to

12  consumers.

**Defendants' Pre-Sale Knowledge Of The Defect**

13
14          29.     At least four (4) years prior to issuing the Recall, Defendants had received numerous

15  reports of the Products' Defect.

16          30.     Indeed, Defendants have publicly disclosed that from at least June 2018 to December

17  2022, Defendants received over **205 complaints** related to the Products' Defect.

18          31.     Defendants, however, did not issue a recall on the Products until February 23, 2023.

19          32.     Thus, Defendants were on notice of the Products' Defect for at least 56 months prior

20  to issuing the recall.

21          33.     More troubling, 10 of the 205 complaints sent to Defendants reported physical

22  injuries, such as burning, stemming from the Products' Defect.  Additionally, 23 of the 205

23  complaints reported property damage.

24          34.     At minimum, such an unusually high number of reports about the same exact issue,

25  as well as the severity of the injuries reported, should have alerted Defendants to the Defect and

26  caused it to take immediate action to protect consumers like Plaintiffs.

27          35.     In short, by June 2018 at the latest, information from consumer complaints directed

28  to Defendants would have put Defendants on notice of the Defect.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                           6

1

**CLASS REPRESENTATION ALLEGATIONS**

2      36.     **Class Definition:** Plaintiffs seek to represent a class defined as all persons in the

3   United States who purchased the Products (the "Class").  Excluded from the Class are persons who

4   made such purchases for purpose of resale.

5      37.     Plaintiffs also seek to represent a subclass of all Class Members who purchased the

6   Products in the State of California (the "California Subclass").  Excluded from the Subclass are

7   persons who made such purchases for purpose of resale.

8      38.     Subject to additional information obtained through further investigation and

9   discovery, the above-described Classes may be modified or narrowed as appropriate, including

10  through the use of multi-state subclasses.

11     39.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiffs do not know the exact

12  number of Class and Subclass Members; however, given the nature of the claims and the number of

13  retail stores in the United States selling Defendants' Products, Plaintiffs believe that Class and

14  Subclass Members are so numerous that joinder of all members is impracticable.

15     40.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23 (b)(3)):** There is a

16  well-defined community of interest in the questions of law and fact involved in this case.  Questions

17  of law and fact common to the members of the Class that predominate over questions that may

18  affect individual Class Members include:

19          (a)     whether Defendants misrepresented and/or failed to disclose material facts

20  concerning the Products;

21          (b)     whether Defendants' conduct was unfair and/or deceptive;

22          (c)     whether Defendants have been unjustly enriched as a result of the unlawful

23  conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the

24  benefits conferred upon Defendants by Plaintiffs and the Classes;

25          (d)     whether Plaintiffs and the Classes sustained damages with respect to the

26  common law claims asserted, and if so, the proper measure of their damages.

27     41.     With respect to the California Subclass, additional questions of law and fact common

28  to the members that predominate over questions that may affect individual members include

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                    7

1   whether Defendants violated the California Consumer Legal Remedies Act as well as California's

2   Unfair Competition law.

3       42.     **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of those of the

4   Classes because Plaintiffs, like all members of the Classes, purchased, in a typical consumer setting,

5   Defendants' Products, and Plaintiffs sustained damages from Defendants' wrongful conduct.

6       43.     **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs will fairly and adequately protect the

7   interests of the Class and Subclass and have retained counsel that is experienced in litigating

8   complex class actions.  Plaintiffs have no interests that conflict with those of the Class or the

9   Subclass.

10      44.     **Superiority (Fed. R. Civ. P. 23(a)(b)(3)):** A class action is superior to other

11  available methods for the fair and efficient adjudication of this controversy.  The prosecution of

12  separate actions by members of the Class and the Subclass would create a risk of establishing

13  inconsistent rulings and/or incompatible standards of conduct for Defendants.  For example, one

14  court might enjoin Defendants from performing the challenged acts, whereas another might not.

15  Additionally, individual actions could be dispositive of the interests of the Class and the Subclass

16  even where certain Class or Subclass Members are not parties to such actions.

### COUNT I
### (Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*)

19      45.     Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

20      46.     Plaintiffs bring this claim individually and on behalf of the members of the proposed

21  Class and Subclass against Defendants.

22      47.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have

23  sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

24  have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she

25  does not have."  Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a

26  particular standard, quality, or grade, or that goods are of a particular style or model, if they are of

27

28

another." Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

48.     Defendants violated Civil Code § 1770(a)(5), (a)(7) and (a)(9) by holding out Products as fit for use as air fryers, when in fact the products were defective, dangerous, and useless.

49.     The Defect at issue here involves a critical safety-related component of the Products, and it was unsafe to operate the Products with the Defect.

50.     Defendants had exclusive knowledge of the Defect, which was not known to Plaintiffs or Class Members.

51.     Defendants made partial representations to Plaintiffs and Class and Subclass Members, while suppressing the safety Defect. Specifically, by displaying the Product and describing its features, the product packaging and Defendants' website implied that the Product was suitable for use as an air fryer, without disclosing that the Products had a critical safety-related defect that could result in harm to users of the Product.

52.     Plaintiffs and Class and Subclass Members have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

53.     On April 28, 2023, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendants a CLRA notice letter, which complies in all respects with California Civil Code §1782(a). The letter also provided notice of breach of express and implied warranties. The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom to all purchasers of the Products. Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for this violation of the CLRA.

## COUNT II
**(Violation of California's Unfair Competition Law,
Business & Professions Code §§ 17200, *et seq.*)**

54.     Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    9

55.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

56.     By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, by engaging in unlawful, fraudulent, and unfair conduct.

57.     Defendants have violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

58.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

59.     As more fully described above, Defendants' misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers like Plaintiffs.

60.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

61.     Plaintiffs and Class and Subclass Members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled product.

62.     There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the defective nature of the Products.

63.     Plaintiffs and Class and Subclass Members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

64.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous,

1    offends established public policy, or is substantially injurious to Plaintiffs and Class and Subclass

2    Members.

3         65.     Plaintiffs and Class and Subclass Members have suffered an injury in fact resulting

4    in the loss of money and/or property as a proximate result of the violations of law and wrongful

5    conduct of Defendants alleged herein, and they lack an adequate remedy at law to address the unfair

6    conduct at issue here.  Legal remedies available to Plaintiffs and Class and Subclass Members are

7    inadequate because they are not equally prompt and certain and in other ways efficient as equitable

8    relief.  Damages are not equally certain as restitution because the standard that governs restitution is

9    different than the standard that governs damages.  Hence, the Court may award restitution even if it

10   determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

11   Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the

12   amount of money Defendants wrongfully acquired plus the legal rate of interest.  Equitable relief,

13   including restitution, entitles Plaintiffs to recover all profits from the wrongdoing, even where the

14   original funds taken have grown far greater than the legal rate of interest would recognize.  Legal

15   claims for damages are not equally certain as restitution because claims under the UCL entail few

16   elements.  In short, significant differences in proof and certainty establish that any potential legal

17   claim cannot serve as an adequate remedy at law.

18        66.     Injunctive relief is also appropriate, and indeed necessary, to require Defendants to

19   provide full and accurate disclosures regarding the Products so that Plaintiffs and Class and

20   Subclass Members can reasonably rely on Defendants' packaging as well as those of Defendants'

21   competitors who may then have an incentive to follow Defendants' deceptive practices, further

22   misleading consumers.

23        67.     Pursuant to California Business and Professional Code § 17203, Plaintiffs and the

24   Class and Subclass seek an order of this Court that includes, but is not limited to, an order requiring

25   Defendants to: (a) provide restitution to Plaintiffs and the other Class and Subclass Members; (b)

26   disgorge all revenues obtained as a result of violations of the UCL; (c) pay Plaintiffs' and the

27   California Subclass' attorney's fees and costs.

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED            11

## COUNT III
### (Fraud by Omission)

68.    Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

69.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

70.    This claim is based on fraudulent omissions concerning the safety of consumers who use the Products.  As discussed above, Defendants failed to disclose that the Products had a dangerous Defect.

71.    The false and misleading omissions were made with knowledge of their falsehood. Defendants are a nationwide distributor of air fryers and other home-cooking essentials who knew of reports of the Products' defective and dangerous nature.  Nonetheless, Defendants continued to sell its worthless air fryers to unsuspecting consumers.

72.     The false and misleading omissions were made by Defendants, upon which Plaintiffs and members of the proposed Class and Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and members of the proposed Class and Subclass to purchase the Products.

73.    Defendants' fraudulent actions caused damage to Plaintiffs and members of the proposed Class and Subclass, who are entitled to damages and punitive damages.

## COUNT IV
### (Unjust Enrichment)

74.    Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

75.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

76.    Plaintiffs and Class and Subclass Members conferred benefits on Defendants by purchasing the Products.

77.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class and Subclass Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendants failed to disclose that the

Products were unfit for use as air fryers.  These omissions caused injuries to Plaintiffs and Class and Subclass Members because they would not have purchased the Products if the true facts were known.

78.    Retention of those monies also is unjust and inequitable because, as alleged above, Defendants commenced an ineffective Recall that was calculated to result in few returns, and no refunds, thereby protecting profits Defendants collected from selling the defective products.

79.    Plaintiffs and members of the putative Class and Subclass have been injured as a direct and proximate result of Defendants' inequitable conduct.  Plaintiffs and members of the putative Class and Subclass lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of its unjust conduct.

80.    Plaintiffs and Class and Subclass Members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendants alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and Class and Subclass Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money Defendants wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles Plaintiffs to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

1

2

**COUNT V**
**(Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq*. and California Commercial Code § 2314)**

3      81.     Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

4      82.     Plaintiffs bring this claim individually and on behalf of the members of the proposed

5   Class and Subclass against Defendants.

6      83.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq.,

7   and California Commercial Code § 2314, every sale of consumer goods in this State is accompanied

8   by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as

9   defined in that Act.  In addition, every sale of consumer goods in this State is accompanied by both

10  a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has

11  reason to know that the goods as represented have a particular purpose (here, to be used as air

12  fryers) and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish

13  suitable goods consistent with that represented purpose.

14     84.     The Products at issue here are "consumer goods" within the meaning of Cal. Civ.

15  Code § 1791(a).

16     85.     Plaintiffs and the Class and Subclass Members who purchased one or more of the

17  Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

18     86.     Defendants are in the business of manufacturing, assembling, producing and/or

19  selling the Products to retail buyers, and therefore are a "manufacturer" and "seller" within the

20  meaning of Cal. Civ. Code § 1791.

21     87.     Defendants impliedly warranted to retail buyers that the Products were merchantable

22  in that they would: (a) pass without objection in the trade or industry under the contract description,

23  and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to

24  be "merchantable" under the Act, it must satisfy both of these elements.  Defendants breached these

25  implied warranties because the Products were unsafe and defective.  Therefore, the air fryers would

26  not pass without objection in the trade or industry and were not fit for the ordinary purpose for

27  which they are used.

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                14

88.     Plaintiffs and Class and Subclass Members purchased the Products in reliance upon Defendants' skill and judgment in properly packaging and labeling the Products.

89.     The Products were not altered by Plaintiffs or Class or Subclass Members.

90.     The Products were defective at the time of sale when they left the exclusive control of Defendants.  The Defect described in this complaint was latent in the Products and not discoverable at the time of sale.

91.     Defendants knew that the Products would be purchased and used without additional testing by Plaintiffs and Class and Subclass Members.

92.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class and Subclass Members have been injured and harmed because they would not have purchased the Products if they knew the truth about the products, namely, that they were unfit for use as air fryers.

## COUNT VI
### (Breach of Implied Warranty Under the Uniform Commercial Code
### U.C.C. §§ 2-314, *et seq.*)

93.     Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

94.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

95.     Defendants, as the designers, manufacturers, distributors, and/or sellers, impliedly warranted that the Products were merchantable with respect to goods of that kind.

96.     Defendants breached the warranty implied in the contract for the sale of the Products because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, the goods were not fit for the ordinary purpose for which such goods are used, the goods are not adequately contained, packaged, and labeled, and the goods do not conform to the promises or affirmations of fact made on the container and label.  As a result, Plaintiffs and members of the Class and Subclass did not receive the goods as impliedly warranted by Defendants to be merchantable.

1    97.    Plaintiffs and members of the Class and Subclass purchased the Products in reliance

2    upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

3    98.    The Products were not altered by Plaintiffs or members of the Class or Subclass in a

4    manner that would cause a defect in the air fryers.

5    99.    The Products were defective when they left the exclusive control of Defendants.

6    100.    Defendants knew that the Products would be purchased and used without additional

7    testing by Plaintiffs and Class and Subclass Members.

8    101.    The Products were defectively designed and unfit for their intended purpose, and

9    Plaintiffs and Class and Subclass Members did not receive the goods as warranted.

10    102.    As a direct and proximate result of Defendants' breach of the implied warranty,

11    Plaintiffs and Class and Subclass Members have been injured and harmed because (a) they would

12    not have purchased the Products on the same terms if they knew that the Products have a safety

13    Defect; and (b) the Products do not have the characteristics, ingredients, uses or benefits as

14    promised by Defendants.

15
**COUNT VII**
**(Violation Of The Magnuson-Moss Warranty Act,**
16
**15 U.S.C. §§ 2301, *et seq.*)**

17    103.    Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

18    104.    Plaintiffs bring this claim individually and on behalf of the members of the proposed

19    Class and Subclass against Defendants.

20    105.    The Products are consumer products as defined in 15 U.S.C. § 2301(1).

21    106.    Plaintiffs and the Class and Subclass Members are consumers as defined in 15 U.S.C.

22    § 2301(3).

23    107.    Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

24    108.    In connection with the marketing and sale of the Products, Defendants impliedly

25    warranted that the Products were fit for use as air fryers.  The Products were not fit for use as air

26    fryers due to the defect described in the allegations above.

27

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    16

1    109.    By reason of Defendants' breach of warranties, Defendants violated the statutory

2  rights due to Plaintiffs and the Class and Subclass Members pursuant to the Magnuson-Moss

3  Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and the Class and Subclass

4  Members.

5    110.    Plaintiffs and the Class and Subclass Members were injured as a direct and

6  proximate result of Defendants' breach because they would not have purchased the Products if they

7  knew the truth about the defective nature of the Products.

8                                    **PRAYER FOR RELIEF**

9    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek

10  judgment against Defendants, as follows:

11    a.    For an order certifying the nationwide Class and California Subclass under Rule 23

12         of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of

13         the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the

14         Class and Subclass Members;

15    b.    For an order declaring the Defendants' conduct violates the statutes referenced

16         herein;

17    c.    For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclass on

18         all counts asserted herein;

19    d.    For compensatory and punitive damages in amounts to be determined by the Court

20         and/or jury;

21    e.    For pre-judgment interest on all amounts awarded;

22    f.    For an order of restitution and all other forms of monetary relief;

23    g.    For an order awarding Plaintiffs and the Class and Subclass their reasonable

24         attorneys' fees and expenses and costs of suit.

25                                **DEMAND FOR TRIAL BY JURY**

26    Plaintiffs demand a trial by jury of all issues so triable.

27

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    17

1   Dated:  January 9, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*/s/ L. Timothy Fisher*_____

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.  I am counsel for Plaintiffs, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.  The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiffs reside in this District.

3.  Plaintiff Shirley Castillo is a resident of San Francisco, California.

4.  Plaintiff Kaden Geiger is a resident of Pleasanton, California.

5.  Defendant Atekcity is an Iowa corporation and, upon information and belief, has its principal place of business at 174 W. Lincoln Ave, #589, Anaheim, CA 92805. Defendant Atekcity manufactures, markets, and distributes the Products throughout the United States.

6.  Defendant Vesync is a California corporation and, upon information and belief, has its principal place of business at 1202 N. Miller St., Unit A, Anaheim, CA 92806. Defendant Vesync manufactures, markets, and distributes the Products throughout the United States.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on January 9, 2024, at Walnut Creek, California.

/s/ *L. Timothy Fisher*
L. Timothy Fisher

CLRA VENUE DECLARATION                                                                                          19